**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHAIT SINGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-26-311-D |
| | ) | |
| TODD BLANCHE,[1] et al., | ) | |
| | ) | |
| Respondents. | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Chait Singh, represented by counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1).[2] Chief United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 4). Respondents timely filed a Response in Opposition to Petitioner's Petition for Writ of Habeas Corpus. (Doc. 12).[3] Petitioner filed a Reply. (Doc. 13).[4] For the reasons set forth below, the undersigned

---

[1] Todd Blanche became the Acting Attorney General on April 2, 2026. Therefore, the Court substitutes him as one of the Respondents in this matter.

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The Response was not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Facility because she is not a federal official. (Doc. 12, at 1). The undersigned finds that a separate response from Warden Grant is not necessary to resolve this matter.

[4] The Reply was untimely filed. However, contemporaneous with the Reply, Petitioner filed a motion for leave to file reply out of time. (Doc. 13, at 6). For good cause shown, the motion is **granted**.

recommends that the Court find that Petitioner is subject to detention under 8 U.S.C. § 1226(a) and entitled to the process due under that statute. However, the undersigned recommends that the Petition (Doc. 1) be **DENIED** because Petitioner has received a bond hearing, and on these facts the Court lacks jurisdiction to review the immigration judge's determination.

## I.    Factual Background

Petitioner is a native and citizen of India who entered the United States on March 8, 2022. (Doc. 1, at 2, 7, 15; Doc. 12, at 8). Petitioner was detained immediately after his arrival, and the same day the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") initiating removal proceedings. (Doc. 1, at 2; Doc. 12, at 8). After requesting a bond hearing, Petitioner was released on a $5,000 bond on or about April 6, 2022. (Doc. 1, at 2, 15; Doc. 12, at 8). Petitioner filed an application for asylum on September 27, 2022. (Doc. 1, at 2, 7, 15; Doc. 12, at 8). Petitioner married a United States citizen in February 2024. (Doc. 1, at 2, 7). His wife then filed a Petition for Alien Relative on his behalf in March 2024, which was approved in August 2025. (Doc. 1, at 2, 3, 7). Respondents do not dispute these facts. (Doc. 12, at 8). Respondents state that on August 28, 2024, DHS successfully moved to dismiss removal proceedings without prejudice under 8 C.F.R. § 1239.2(c). (*Id.*) Petitioner has a valid employment authorization through September 2030. (Doc. 1, at Ex. 5). Petitioner states, and Respondents do not dispute, that he has no criminal record and he has complied with all ICE supervision requirements. (Doc. 1, at 2).

On December 15, 2025, Petitioner was arrested during a traffic stop and taken to the Tulsa County Jail. (*Id*. at 3). Following his arrest, DHS issued a new NTA, again placing Petitioner into removal proceedings. (Doc. 12, at Ex. 1). Petitioner requested a custody redetermination pursuant to 8 C.F.R. § 1236. (*Id*. at Ex. 3). At a hearing on January 20, 2026, an immigration judge ("IJ") denied bond due to "[n]o jurisdiction," citing 8 U.S.C. § 1225(b)(2)(A) and the decision of the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) ("*Hurtado*").[5] (*Id*.) The IJ also held, "[i]n the alternative, and after hearing and considering the totality of evidence before the Court, the Court denies bond based on its finding that [Petitioner] presents a flight risk." (*Id*.) Respondents state that Petitioner has not yet appealed the bond order. (Doc. 12, at 9, 10). Petitioner remains in ICE custody. (Doc. 1, at 3, 15; Doc. 12, at 8). Petitioner's removal proceedings are ongoing. (Doc. 1, at 7).

When Petitioner filed his Petition he was detained at the Cimarron Correctional Facility in Cushing, Oklahoma, and he is still detained there. (Doc. 1, at 3, 15; Doc. 12, at 8); *see* ICE Online Detainee Locator System, at https://locator.ice.gov/odls/#/results (last visited Apr. 2, 2026).

---

[5] On September 5, 2025, the BIA determined in *Hurtado* that an immigration judge does not have authority to hear a request for bond by an alien present in the United States who has not been admitted after inspection because the alien was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

## II.    Petitioner's Claims

Petitioner alleges his "summary arrest and detention violate substantive and procedural due process because they lack any individualized finding of danger or flight risk and were imposed without notice or an opportunity to be heard." (Doc. 1, at 4).  He further asserts that he has "a protected liberty interest in [his] ongoing freedom from confinement." (*Id*. at 10).  Petitioner also alleges that he has been previously released on bond, has no criminal record, and there is no evidence that he poses a flight or safety risk. (*Id*. at 16).

In Count One, Petitioner claims his detention violates substantive due process under the Fifth Amendment.  (*Id*. at 17).  Petitioner states he is neither a flight risk nor a danger to the community making his detention "unjustified and unlawful." (*Id*.)  Petitioner also alleges his "detention is punitive as it bears no 'reasonable relation' to any legitimate government purpose." (*Id*.)  Petitioner contends his detention is not meant "to facilitate deportation, or to protect against risk of flight or dangerousness" but rather to meet new quotas and seek a more favorable venue for an expedited removal.  (*Id*.)

In Count Two, Petitioner claims that his detention by Respondents violates procedural due process under the Fifth Amendment.  (*Id*. at 18).  Specifically, Petitioner alleges that his "re-detention without a pre-deprivation hearing violated due process." (*Id*.) Petitioner asserts that before he was re-detained, he should have had advance notice, an explanation justifying his re-detention, and an opportunity to contest his re-detention. (*Id*. at 18-19).    Petitioner contends he "has a weighty liberty interest in avoiding re-incarceration after his release." (*Id*. at 18).

In opposition, Respondents argue that under 8 U.S.C. § 1225, Petitioner is an applicant for admission because he is present in the United States and entered without admission. (Doc. 12, at 1-3).  Accordingly, Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (*Id*. at 4-6).  Respondents also assert that because Petitioner has had a recent bond hearing that he has not appealed, he is now improperly using these proceedings to challenge the IJ's decision. (*Id*. at 10).  Respondents make brief argument that under the jurisdiction channeling and stripping provisions of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1252(b)(9), this Court lacks jurisdiction to consider Petitioner's claims. (*Id*. at 7, 9).

As for Petitioner's due process claims, Respondents claim that because Petitioner is challenging executive actions, the conduct he challenges must satisfy the "shocks-the-conscience" standard. (*Id*. at 11).  Respondents argue the detention conditions do not rise to "a degree of outrageousness or magnitude of harm that is truly conscience shocking." (*Id*. at 12).  Respondents further contend that Petitioner's detention is "authorized and permissible" because the IJ found Petitioner is not entitled to bond and the alleged facts do not show his detention is conscience shocking. (*Id*.)

Respondents also argue that Petitioner has received all the procedural protections he is due. (*Id*. at 14).  Respondents assert that Petitioner has had, and continues to have, opportunities to be heard. (*Id*.)  Respondents specifically point to both the bond hearing on January 20, 2026, which has not been appealed, and the additional hearings scheduled in the removal proceedings as means by which Petitioner's procedural due process has been met. (*Id*.)  Finally, Respondents assert that Petitioner's request to limit future actions by

5

any IJ is not ripe for decision. (*Id*. at 15). Respondents contend this Court is jurisdictionally barred from reviewing an IJ's bond decisions. (*Id*.)

In Reply, Petitioner argues that he is not an applicant for admission and seeking admission under § 1225(b) and thus cannot be subjected to mandatory detention. (Doc. 13, at 2-3). He further argues that the immigration judge who conducted his bond hearing on January 20, 2026, disclaimed jurisdiction over the matter under *Hurtado*, such that his alternative finding of flight risk is "ultra vires and legally irrelevant." (*Id*. at 4). He re-urges his due process argument and also asserts that 8 U.S.C. § 1252(g) does not bar this Court's habeas review. (*Id*. at 5).

Petitioner seeks immediate release from ICE detention. (Doc. 1, at 20). Petitioner asks the Court to declare that his arrest and detention violate the Due Process Clause of the Fifth Amendment. (*Id*.) Petitioner also asks the Court to enjoin the Respondents from re-detaining him "unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving by clear and convincing evidence that [he] is a flight risk or a danger to the community." (*Id*.) Finally, Petitioner asks the Court to "award . . . his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412."[6] (*Id*.)

---

[6] To the extent Petitioner may be entitled to EAJA fees and costs, Petitioner must seek those separately. 28 U.S.C. § 2412(d)(1)(B); *see also Daly v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the undersigned does not address this request at this juncture.

### III.    Analysis

#### A.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

#### B.    The Court Has Jurisdiction To Consider the Petition.

Respondents argue in passing that this Court lacks jurisdiction to consider Petitioner's claims, based on 8 U.S.C. §§ 1252(g) and 1252(b)(9). (Doc. 12, at 7, 9). However, Judges of this District have consistently ruled the INA "does not jurisdictionally bar" a habeas claim like Petitioner's because such a claim does not arise from and "does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders." *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *2 (W.D. Okla. Dec. 16, 2025); *see also Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026) (same); *Alvarado Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *4-5 (W.D. Okla. Dec. 26, 2025) (same); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025) (same); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *2 (W.D. Okla. Dec. 8, 2025) (same); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at *1 (W.D. Okla. Jan. 20, 2026) (same). *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026) (expressing "grave doubts over whether it has subject

matter jurisdiction" but assuming it had jurisdiction to proceed to the merits). The undersigned agrees with the majority of Judges of this District in finding that jurisdiction exists to consider Petitioner's habeas challenge to detention.[7]

C.    **The Undersigned Agrees With the Majority of this District Court and District Courts Nationwide that the Detention of Aliens Like Petitioner is Governed by § 1226(a).**

Petitioner's immigration detention implicates two sections of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225 and § 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13). Under § 1225(b)(2)(A), "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." (Emphasis added). In other words, the alien is subject to mandatory detention while he awaits removal proceedings.

On the other hand, § 1226(a) authorizes detention of an alien "on a warrant issued by the Attorney General." *Id.* § 1226(a) (citation modified). An alien detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he

---

[7] While the Court has jurisdiction over the Petition, the Court does not have jurisdiction to review the immigration judge's discretionary determination at the bond hearing. *See infra* § III.E.

should be released while he awaits removal proceedings because he is not a danger to others or at risk for non-appearance. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Accordingly, if Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he must be detained and is not entitled to a bond hearing. If he is not an "applicant for admission" and "seeking admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing and potentially release.

Respondents argue that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) because he meets the definition of an applicant for admission and "[n]othing in the language of § 1225 limits its operation to only those applicants for admission who are arriving." (Doc. 12, at 1-6) (citing *Alvarado Montoya*, 2025 WL 3733302, at *7). The undersigned disagrees with this analysis and conclusion.

Indeed, the undersigned has issued more than twenty Reports and Recommendations setting forth a detailed analysis of the statutory text and legislative history of § 1225 and § 1226, a discussion of the BIA's application of the statutes for the past three decades, and comparison to the reasoning of numerous recent cases from both within and outside this District that have considered the same issues. Central to that analysis is the undersigned's conclusion that for § 1225(b)(2)(A) to apply, the alien must be both an "applicant for admission" and "seeking admission" and that

the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)

9

do not cleanly apply to aliens like Petitioner. "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. The use of the present participle in § 1225(b)(2)(A) implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Caballero* [*v. Baltazar*], 2025 WL 2977650, at *6 [(D. Colo. Oct. 22, 2025)] (citation modified).

*Damian v. Jones*, No. CIV-25-1561-J, 2026 WL 682545, at *7 (W.D. Okla. Feb. 2, 2026), *report and recommendation adopted*, 2026 WL 446295 (W.D. Okla. Feb. 17, 2026). Thus, the undersigned has consistently concluded that § 1226(a), not § 1225(b)(2)(A), governs the detention of aliens who were apprehended when they were already present in the country without admission, as opposed to arriving at the border.

In response to a growing number of habeas challenges in the Western District of Oklahoma, Chief Judge DeGiusti, Judge Palk, Judge Jones, Judge Russell, and Judge Heaton have repeatedly come to the same conclusion. *See*, *e.g.*, *Damian v. Jones*, No. CIV-25-1561-J, 2026 WL 446295, at *2 (W.D. Okla. Feb. 17, 2026); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at *1 (W.D. Okla. Jan. 20, 2026); *Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *5 (W.D. Okla. Jan. 20, 2026); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025); *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *4-5 (W.D. Okla. Dec. 16, 2025). Accordingly, the Judges have granted habeas relief in the form of bond hearings under § 1226(a).

Other district courts in the Tenth Circuit are in agreement. *See, e.g., Aguilar Tanchez v. Noem*, No. 25-CV-1150, 2026 WL 125184, at *10 (D. Utah Jan. 16, 2026) (holding petitioner's detention is governed by § 1226(a) and not § 1225(b)(2)); *Leonardo G.Z. v. Noem*, No. 25-CV-600, 2025 WL 3755590, at *10 (N.D. Okla. Dec. 29, 2025)

10

(applying § 1226(a) after "having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens"); *Cruz Valera v. Baltazar*, No. 25-CV-03744, 2025 WL 3496174, at *3 (D. Colo. Dec. 5, 2025); *Pu Sacvin v. De Anda-Ybarra*, No. 25-cv-1031, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025).

More generally, an "overwhelming, lopsided majority" of district courts around the country have applied § 1226(a) to govern detention for aliens like Petitioner. *Mercado v. Francis*, --- F. Supp. 3d ---, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting the contrary interpretation of § 1225 and § 1226 "has been challenged in at least 362 cases in federal district court" and "challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States"); s*ee also Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025) ("[O]f the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here.").

The Seventh Circuit Court of Appeals has weighed in on this issue. The court ruled on a motion to stay pending appeal that based on a "preliminary record" the respondents "are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025). The Seventh Circuit reasoned that

§ 1225(a)(1) defines an "applicant for admission" as "an alien present in the

11

United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). And while a noncitizen arrested in the Midwest might qualify as "an alien present in the United States who had not been admitted," § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A).

*Id*. at 1061. Judges in this District have found the Seventh Circuit's analysis to be persuasive. *Maldonado v. Noem*, No. CIV-25-1379-J, 2026 WL 160950, at *1 (W.D. Okla. Jan. 21, 2026); *Valdez*, 2025 WL 3709021, at *2; *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287, at *2 (W.D. Okla. Jan. 23, 2026).

In contrast, Judge Dishman and Judge Wyrick in this District have adopted Respondents' position that aliens like Petitioner fall under § 1225(b)(2)(A) despite residing in the United States at the time of their apprehension by ICE. *See Gutierrez Sosa*, 2026 WL 36344; *Alvarado Montoya*, 2025 WL 3733302. Additionally, the Fifth and Eighth Circuit Courts of Appeals recently applied § 1225 to a similar habeas challenge, agreeing with Respondents' position based on "the relevant provisions and structure of the [INA], the statutory history, and Congressional intent." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026); *see Avila v. Bondi*, --- F.4th ----, 2026 WL 819258 (8th Cir. Mar. 25, 2026).

The undersigned respectfully disagrees with the textual analysis and statutory interpretations by these courts. Notably, several Judges in this District have expressly acknowledged the Fifth and Eighth Circuit rulings but have not altered their analysis. *See Campa v. Johnson*, No. CIV-26-1-HE, 2026 WL 446978, at *1 (W.D. Okla. Feb. 17, 2026) ("The 2-1 decision in *Buenrostro-Mendez* makes clear that strong arguments support both

12

statutory readings of the parties.  The court, however, remains persuaded that § 1226(a) governs and continues to follow similar rulings by the judges in this district and the Seventh Circuit Court of Appeals in *Castanon-Nava*."); *Abhishek v. Holt*, No. CIV-26-221-SLP, 2026 WL 852091, at *2 & n.6 (W.D Okla. Mar. 27, 2026) (granting habeas relief despite contrary authority in Western District of Oklahoma and Fifth and Eighth Circuits); *Raj v. Anda-Ybarra*, No. CIV-26-125-D, 2026 WL 852093, at *1 & n.1 (W.D. Okla. Mar. 27, 2026) (granting habeas relief despite contrary authority in Fifth and Eighth Circuits).

Relevant to the instant case, Judges in this District have held that an alien's efforts to gain legal status after having entered without admission do not render him subject to § 1225(b)(2)(A).  *See, e.g., Singh v. Bondi*, No. CIV-26-43-J, 2026 WL 483482, at *2 (W.D. Okla. Feb. 20, 2026) (rejecting Respondents' argument that Petitioner is seeking admission and § 1225(b)(2) therefore applies because he filed a Form I-589 asylum application during his removal proceedings); *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li*, 2026 WL 147438, at *1 (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum"); *Medina-Herrera v. Noem*, No. CIV-25-1203-J, 2025 WL 3460946, at *4 (W.D. Okla. Dec. 2, 2025) (rejecting Respondents' argument that Petitioner is seeking admission by filing an application to cancel removal proceedings and finding that a 42B application "does not transform [petitioner] into a person 'seeking admission' within § 1225(b)(2)'s context"); *Morocho*, 2026 WL 36452, at *3 (same) (citing *Medina-Herrera*).  Thus, Petitioner's

application for asylum and Petition for Alien Relative do not render him "seeking admission" and subject to § 1225(b)(2)(A).

Moreover, the conclusion that § 1226 governs an alien's recent detention by ICE is only bolstered in cases like the instant one, in which Petitioner was previously detained by ICE and later released on bond pursuant to § 1226.[8]  (Doc. 1, at 2).  *See, e.g.*, *Vielma Uzcategui v. Brooksby*, Case No. 4:26-cv-20-DN-PK, 2026 WL 622751, at *9 (D. Utah Mar. 5, 2026) (finding petitioner was entitled to a bond hearing under § 1226(a) when she had been originally released on her own recognizance under § 1226(a) and then later detained without bond because "[a]s numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later switching tracks to subject her to mandatory detention under § 1225(b)(2).  The rule is simple: Sections 1226(a) and 1225(b) cannot be applied simultaneously.") (citation modified); *Bello Chacon v. Hermosillo*, No. 25-CV-2299, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (finding petitioner's prior release on recognizance under § 1226 indicates he "was—and continues to be—subject to discretionary detention under § 1226"); *Chen v. Soto*, No. CV 25-17198, 2025 WL 3527239, at *3 (D.N.J. Dec. 9, 2025) (granting habeas relief and ordering respondents to provide a bond hearing for petitioner previously released on his own recognizance pursuant to § 1226 because previously treating petitioner

---

[8] Petitioner was previously detained pursuant to removal proceedings that were later dismissed. (Doc. 12, at 8).  Petitioner has been re-detained on new proceedings. (*Id.* at Ex. 1).  It is unclear what effect that has in relation to this point, but the undersigned finds Petitioner is properly classified under § 1226 irrespective of which removal proceedings are considered.

14

under § 1226 "defeats respondents' new position that a different statutory provision applies").

Based on the foregoing analysis, the undersigned recommends that the Court finds that § 1226(a) governs Petitioner's detention.

### D. Because §1226 Governs Petitioner's Detention, Procedural Due Process Requires That He Receive a Bond Hearing; Such a Hearing Was Conducted.

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V.  It is well established that the Due Process Clause applies to non-citizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

The undersigned finds that (1) as a non-citizen properly classified under § 1226, Petitioner has a protected liberty interest in freedom from immigration detention, and (2) the procedure of the bond hearing as provided in § 1226 is necessary to ensure that deprivation of that protected liberty interest accords with due process. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) ("Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that

provided for in § 1226—namely, an individualized bond hearing before an IJ."); *Requejo Roman v. Castro*, 2026 WL 125681, at *8 (D.N.M. Jan. 12, 2026) ("Because Petitioner is subject to § 1226's discretionary detention provision rather than mandatory detention under § 1225, he is entitled to a bond hearing."); *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 785 (E.D. Mich. Aug. 29, 2025) ("[T]he Court has specifically held that Section 1226(a) governs Lopez-Campos' detention, therefore the process due to him is that which is afforded under Section 1226(a).").

The Petition did not disclose that Petitioner had a bond hearing on January 20, 2026, (*see* Doc. 1), but Respondents provided evidence of this hearing, at which the IJ found that pursuant to § 1225(b)(2)(A) and *Hurtado*, he lacked jurisdiction to set a bond for Petitioner. (Doc. 12*,* at Ex. 3).  The IJ also held, "[i]n the alternative, and after hearing and considering the totality of evidence before the Court, the Court denies bond based on its finding that Respondent presents a flight risk."  (*Id*.)  Respondents state that Petitioner has not yet appealed the bond order.  (Doc. 12, at 9, 10).  In Reply, Petitioner argues that because the IJ found he had no jurisdiction, his alternative finding of flight risk is "ultra vires and legally irrelevant."  (Doc. 13, at 4).  As explained below, the undersigned disagrees.

###    E.    This Court Cannot Review the Discretionary Determination of the IJ That Petitioner Is a Flight Risk.

The determination of bond under § 1226(a) is within the purview of the IJ, who considers whether a non-citizen is a flight risk or a danger to the community.  § 1226(a); 8 C.F.R. § 236.1(c).  If he is neither, he can be released from detention while his removal

proceedings are pending.  Appeals of the immigration judge's decision are to be reviewed by the BIA.  8 CFR § 1003.19(f).  Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of [Section 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).  "Thus, a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond." *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026) (citing *Valeriano v. Soto*, No. CV 25-16100 (MAS), 2026 WL 63710, at *2 (D.N.J. Jan. 8, 2026) ("Where an immigration judge makes a ruling as to granting or denying bond under § 1226(a), . . . the Court has no jurisdiction to second guess or reconsider the immigration judge's decision."); *Perez v. Holt*, No. CIV-25-1151-SLP, 2026 WL 597126, at *6 (W.D. Okla. Mar. 3, 2026) ("Thus, the Court finds that the IJ relied on evidence in the record to make a discretionary decision to deny Petitioner bond; therefore, this Court lacks subject matter jurisdiction to review that decision.").

Like Judge Russell in *Kumar*, 2026 WL 753944, the undersigned "is not persuaded, based on the arguments before it, that the IJ's decision was unlawful merely 'because it was handed down on an in-the-alternative basis.'" *Id*. at *2.  Judge Russell relied on *Chiquito Barzola v. Warden, Delaney Hall Det. Facility Newark, NJ*, No. 2:25-CV-17326 (MEF), 2025 WL 3443487, at *2 (D.N.J. Dec. 1, 2025), which is directly on point here.  In *Chiquito Barzola*, the habeas petitioner was granted a bond hearing at which the IJ found that she lacked jurisdiction to release Petitioner because the case was controlled by

*Hurtado*, but ruled in the alternative that Petitioner was not entitled to release because he posed a flight risk. *Id*. at *2. The court found:

> There is no reason to discount the Immigration Judge's risk-of-flight holding because it was handed down on an in-the-alternative basis. In-the-alternative holdings are understood as providing, on their own, a sufficient foundation for a court's ruling. *See Phila. Marine Trade Ass'n-Int'l Longshoremen]s Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 147 n.5 (3d Cir. 2008) (quoting *Woods v. Interstate Realty Co*., 337 U.S. 535, 537 (1949)).
>
> Therefore, the Immigration Judge's in-the-alternative holding, that the Petitioner is a risk of flight, supplies an adequate basis for the Immigration Judge's determination that the Petitioner should remain detained.

*Id*. The undersigned likewise finds in this case that "[t]he Court lacks jurisdiction to reconsider the IJ's discretionary decision to deny bond." *Kumar*, 2026 WL 753944, at *2.

It should be noted that § 1226(e) does not deprive the Court of jurisdiction over constitutional claims or questions of law relating to the bond determination hearing. *Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026). *See also Sin Johal v. Bondi*, No. CIV-25-1408-J, 2026 WL 517529, at *2 (W.D. Okla. Feb. 25, 2026), *opinion vacated on other grounds*, Doc. 20 (W.D. Okla. Mar. 6, 2026) (adopting the Magistrate Judge's recommendation that § 1226(e) does not strip the court of jurisdiction to determine whether a bond hearing is "legally erroneous or unconstitutional") (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1178 (D. Colo. 2024) ("District courts lack jurisdiction to review an IJ's bond determination. But district courts do have jurisdiction under 28 U.S.C. § 2241 to consider any error of law in Petitioner's agency proceedings, including any claimed due process violation." (cleaned up)); *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020) ("In the context of an

immigration bond hearing, district courts have jurisdiction to review [an IJ's] discretionary bond denial only where that bond denial is challenged as legally erroneous or unconstitutional.") (citation modified); *Garcia v. Green*, 2016 WL 1718102, at *3 (D.N.J. Apr. 29, 2016) (noting that a district court "may order a bond hearing where the bond hearing was conducted unlawfully, or where the petitioner has erroneously been denied a hearing").

The IJ's bond determination order states that a hearing was held and that the IJ considered evidence. (Doc. 12, at Ex. 3). As in *Kumar*, "Petitioner does not indicate that he was denied the opportunity to present evidence at the bond hearing or that the IJ improperly shifted the burden of proof. . . . [Thus], he has not shown that the decision was somehow legally erroneous or unconstitutional." 2026 WL 753944, at *2.[9] Thus, the Court lacks jurisdiction under § 1226(e) to review or set aside the IJ's bond determination.

---

[9] Judge Russell indicates that a bond hearing would be legally erroneous or unconstitutional if the IJ applied an improper burden of proof. *See Kumar*, 2026 WL 753944, at *2 (citing for example *Barreno v. Baltasar*, No. 025-CV-03017-GPG-TPO, 2025 WL 3190936, at *3 (D. Colo. Nov. 14, 2025) (concluding that "Respondents failure to provide Petitioner with a detention hearing at which the government bore the burden of proof violated her Fifth Amendment rights")). Similarly, the undersigned has previously recommended that the Court find that the proper habeas remedy for a due process violation caused by the illegal detention of a non-citizen under § 1225(b)(2)(A) and denial of a bond hearing is a bond hearing at which the government bears the burden of proof. *Singh v. Grant*, No. CIV-26-88-G, Doc. 14 (W.D. Okla. Mar. 30, 2026).

The Petition asks that the Court immediately release Petitioner from custody and to enjoin the Respondents from re-detaining him "unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving by clear and convincing evidence that [he] is a flight risk or a danger to the community." (Doc. 1, at 20). In his Reply, Petitioner requests this relief or in the alternative requests the Court order a second bond hearing at which the government bears the burden of proof. (Doc. 13,

## IV.    Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Court find that Petitioner is subject to detention under 8 U.S.C. § 1226(a) and entitled to the process due under that statute.  However, the undersigned recommends that the Petition (Doc. 1) be **DENIED** because Petitioner has received a bond hearing, and on these facts the Court lacks jurisdiction to review the immigration judge's determination to deny bond based on a risk of flight.

**The Court advises the parties of their right to object to this Report and Recommendation by April 10, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[10]  The Court advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

at 6).  **However, the Petitioner nowhere alleges that that the IJ used the wrong burden of proof at his January 20, 2026, hearing.**

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations.  *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 3rd day of April, 2026.

_Amanda L. Maxfield_
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE